UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-0384 JGB (SKx)** | Date | February 3, 2026 |
|---|---|---|---|
| Title | ***Khachatur Zakaryan v. Pamela Bondi, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None | None |

Proceedings:    **Order: (1) GRANTING Petitioner's Ex Parte Application for a
Temporary Restraining Order (Dkt. No. 2) (IN CHAMBERS)**

Before the Court is petitioner Khachatur Zakaryan's ex parte application for a temporary
restraining order. ("TRO," Dkt. No. 2.) The Court finds this matter appropriate for resolution
without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support
of and in opposition to the TRO, the Court **GRANTS** the TRO.

## I.    BACKGROUND

On January 28, 2026, petitioner Khachatur Zakaryan ("Petitioner") filed a writ of habeas
corpus. ("Writ," Dkt. No. 1.) That same day Petitioner filed an ex parte application for
temporary restraining order. (TRO.) In support of the TRO, Petitioner filed a declaration of
Sabrina Damast, ("Damast Decl.," Dkt. No. 2-2), and a declaration of Khachatur Zakaryan
("Zakaryan Decl.," Dkt. No. 2-3). On January 29, 2026, the Court issued an order preventing
the government from removing or transferring Petitioner absent further order of the Court later
that day. ("Order," Dkt. No. 5.) The Court ordered the government to respond by 12:00 p.m.
the following day, January 30, 2026. (Id. at 2.) The government declined to file a response by
the deadline. After the deadline on January 30, 2026, the government notified the Court that it
did "not have an opposition argument . . . to present." (Dkt. No. 8.)

//

---

## II.  FACTS

Petitioner previously spent three months in the custody of U.S. Immigration and Customs Enforcement ("ICE") following an order of removal issued in November 2015. (Zakaryan Decl. ¶ 2.)  Petitioner was released on an order of supervision because ICE was unable to obtain travel documents from Armenia.  (Id.)  Petitioner served prison time in 2017.  (Id. ¶ 3.)  Petitioner was released directly to ICE custody in 2021 where he was detained for approximately two to two-and-a-half months.  (Id. ¶ 3.)  Petitioner was again released on an order of supervision in October 2021 after Armenia again declined to issue travel documents.  (Id. ¶ 3.)  Petitioner reported to a check in on January 6, 2026 when he was detained by ICE.  (Id. ¶¶ 3-4.)  An officer served him a Notice of Revocation of Release ("Notice") signed by "SDDO N. McKenna."  (Id. ¶ 5.)  The officer informed Petitioner that ICE wanted to deport him on account of his order of removal.  (Id.)  The Notice of Revocation of Release stated that there were "changed circumstances in his case and that his case was under review for the issuance of travel documents.  (Id. ¶ 5.)

Petitioner was transferred to the Adelanto Detention Facility later on January 6, 2026. (Id. ¶ 6.)  Two to three days after Petitioner arrived at Adelanto, ICE officers requested to take Petitioner's photo.  (Id.)  On or around January 21, 2026, ICE officers met with Petitioner to discuss an application for travel documents.  (Id.)  Petitioner informed the ICE officers that he had a lawyer and declined to speak with them further.  (Id.)  No officer at Adelanto has asked Petitioner if there is a reason that he should not be detained or deported.  (Id. ¶ 7.)

Prior to Petitioner's detention, he lived at home with his U.S. citizen partner and children.  (Id. ¶ 8.)  His brothers and parents are also U.S. citizens.  (Id.)  Petitioner was employed at the Los Angeles County Treatment Center and supported his family.  (Id.)

Petitioner's attorney Sabrina Damast provided notice of the TRO to Daniel Beck on January 27, 2026 via email.  (Damast Decl. ¶ 4.)  Mr. Beck informed Ms. Damast that the government opposes the TRO.  (Id.)

## III. LEGAL STANDARD

A temporary restraining order may be issued upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 61(b)(1)(A).  The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction.  See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. Lockhead Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v.

---

Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 690 (2008) (citations omitted). An injunction is binding only on parties to the action, their officers, agents, servants, employees, attorneys, and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d).

Courts in the Ninth Circuit may consider the Winter factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the Winter test").

## IV. DISCUSSION

To secure a TRO or a preliminary injunction, Petitioner must show that he is likely to succeed on the merits, likely to suffer irreparable harm, and that the balance of equities and the public interest tip in their favor. Winter, 555 U.S. at 20. Likelihood of success on the merits "is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020). Because both parties have had an opportunity to file briefs, the Court converts the TRO into a preliminary injunction.

## A.    Jurisdiction

Petitioner challenges his detention by ICE and seeks habeas relief pursuant to 28 U.S.C. § 2241. (Writ ¶ 15.) "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973). Accordingly, the Court's habeas jurisdiction is properly invoked.

## B.    Likelihood of Success on the Merits

"Likelihood of success on the merits is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020). Petitioner argues that his detention violates his Fifth Amendment substantive and procedural due process rights. (TRO at 7.) "Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause "protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. As a result, the government can only detain individuals outside of the criminal context in "certain special and 'narrow' nonpunitive 'circumstances.'" Id. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). Under 8 U.S.C. § 1231, the "post-removal-period detention statute," there are two permissible goals for post-removal detention: "preventing flight" and "protecting the community." Id. Because flight risk is attenuated where removal is not possible and indefinite

detention on the basis of protecting the community is allowed under only limited circumstances, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. Otherwise, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." Id. at 690.

Furthermore, the Supreme Court has separately recognized that an individual on parole, which is analogous to an order of supervision, has a liberty interest under the Fourteenth Amendment's Due Process Clause requiring "some informal procedural guarantees." Morrissey v. Brewer, 408 U.S. 471, 482-83 (1972); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (extending Morrisey to probation revocation); Young v. Harper, 520 U.S. 143, 145 (1997) (extending Morrissey to Oklahoma's preparole program because it is also "a kind of parole"). This liberty interest exists even though a revocation of parole arises outside of the protections of criminal proceedings. Morrissey, 408 U.S. at 480. "[T]he loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process." Gagnon, 411 U.S. at 781. Further emphasizing that this liberty interest does not arise exclusively in the criminal context, the Supreme Court compared the right guaranteed parolees to a "preliminary hearing" to that guaranteed welfare recipients prior to the termination of their benefits. Morrissey, 408 U.S. at 485 (citing Goldberg v. Kelly, 397 U.S. 254, 267-271 (1970)). Although the Due Process Clauses of the Fifth and Fourteenth Amendments cannot always be read uniformly, see Fuld v. Palestine Liberation Org., 606 U.S. 1, 13 (2025), the Court is convinced that the liberty interest protecting parolees from revocation without a hearing applies with equal force to noncitizens under orders of supervision. See J.O.L.R., Petitioner, v. Minga Wofford, Mesa Verde ICE Processing Ctr. Facility Administrator, No. 1:25-CV-01241-KES-SKO (HC), 2025 WL 2908740, at *5 (E.D. Cal. Oct. 14, 2025) ("The Court finds that petitioner has a protected liberty interest in his release."); Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205 (9th Cir. 2022) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Finally, it is well-established that government agencies must follow their own regulations. Morton v. Ruiz, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required."). Here, the government has promulgated two regulations to govern orders of supervision. ICE may only revoke an order of supervision if: "(i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8. C.F.R. § 241.4(l)(2). ICE officials must provide an individual whom ICE decides to re-detain with a copy of the decision "with the reasons for the continued detention." 8 C.F.R. § 241.4(d). Subsequently, ICE must provide the noncitizen "an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation." 8 C.F.R. § 241(l)(1). Multiple courts have interpreted 8 C.F.R. § 241(l)(1) as requiring an informal interview when ICE revokes a noncitizen's order of supervision. See Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) (collecting cases); Grigorian v. Bondi, No. 25-CV-22914-RAR, 2025 WL 2604573, at *9 (S.D. Fla. Sept. 9, 2025) ("The opportunity to contest detention through an informal interview is not some ticky-

tacky procedural requirement; it strikes at the heart of what due process demands.").

Following the Supreme Court's decision in <u>Zadvydas v. Davis</u>, ICE issued 8 C.F.R. § 241.13 to govern custody determinations for noncitizens subject to a final order of removal whose removal period has expired and where there is not a significant likelihood of removal. Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967 (Nov. 14, 2001). ICE can only re-detain a noncitizen subject to 8 C.F.R. § 241.13 if the noncitizen has violated the conditions of his release or if ICE has determined "on account of changed circumstances . . . there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). In the latter case, ICE must provide the noncitizen an "informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation." 8 C.F.R. § 241.13(i)(3). Thus, if a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more limited circumstances than 8 C.F.R. § 241.4(l) and must similarly provide them an informal interview.

Thus, the Court finds that under the Fifth Amendment's Due Process Clause Petitioner has a right to be free from indefinite detention, a liberty interest to an informal hearing prior to revocation of his order of supervision, and a right to an informal interview under ICE's internal procedures.

The government has declined to respond to the TRO. As such, on the basis of the TRO, the Court determines that the government is no closer to removing Petitioner than it has for the last decade since Petitioner's order of removal was issued. (TRO at 9-10.) Therefore, the government fails to demonstrate that removal is reasonably foreseeable sufficient to warrant changed circumstances. (<u>Id.</u> at 10-11.) Furthermore, the government has failed to provide Petitioner an informal interview to contest his re-detention as required by regulation. (<u>Id.</u> at 11-12.) Thus, the Court finds that Petitioner has met his burden of showing that there is "no significant likelihood of removal in the reasonably foreseeable future." <u>Zadvydas</u>, 533 U.S. at 701.

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest. Under <u>Mathews v. Eldridge</u>, the Court considers three factors:[1] "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

---

[1] The Court follows the Ninth Circuit, which regularly employs <u>Mathews v. Eldridge</u> in the context of due process challenges in the immigration context. <u>See Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

**CIVIL MINUTES—GENERAL**        Initials of Deputy Clerk <u>MG</u>

Under the first factor, Courts have regularly described a petitioner's interest in remaining out of custody as "substantial." Diaz v. Kaiser, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025). The weight of the factor grows as a party remains out on bond for an extended period of time. Morrissey, 408 U.S. at 482. Here, Petitioner was previously released on an order of supervision in 2016 and 2021. (Zakaryan Decl. ¶¶ 2-3.) Thus, with the exception of a brief period of detention in 2021, ICE released Petitioner on an order of supervision for nearly a decade. (Id.) Petitioner's interest is significant.

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high with no process offered to Petitioner during his re-detention and no rationale provided for his re-detention except for the Notice of Revocation of Release, which states that "there are changed circumstances." (Id. ¶ 5; "Notice," Dkt. No. 2-7.) This risk is heightened in the context of civil immigration detention, which must be "nonpunitive in purpose." Zadvydas, 533 U.S. at 690.

Furthermore, it is not clear that Supervisory Detention and Deportation Officer N. McKenna ("McKenna") holds the authority to revoke Petitioner's order of supervision. (Mot. at 14.) 8 C.F.R. § 241.4 provides the "Executive Associate Commissioner" the authority to revoke an individual's order of supervision. That authority now rests with the Executive Associate Director of ICE. See 8 C.F.R. § 1.2 ("Commisioner means . . . the Director of U.S. Immigration and Customs Enforcement"); see also Ceesay, 781 F. Supp. 3d at 160 (holding that the "Executive Association Commissioner" referenced in 8 C.F.R. § 241.4(l) now refers to the "Executive Associate Director of ICE"); Santamaria Orellana v. Baker, No. CV 25-1788-TDC, 2025 WL 2444087, at *4 (D. Md. Aug. 25, 2025) (same). As an alternative to the Executive Associate Director of ICE, a "district director" may revoke an order of supervision "when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(l)(2). McKenna's title does not indicate that she is the Executive Associate Director of ICE or a district director. Id. Even assuming that McKenna is a district director, the Notice does not explain why revocation is in the public interest or why referral was not possible to the Executive Associate Director of ICE. Id. Accordingly, the Court finds that Petitioner faces a substantial risk of an erroneous deprivation of his liberty.

As to the third factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). Although the Ninth Circuit's holding arose in a challenge to a different statute governing immigration detention, 8 U.S.C. § 1226(a), the Court finds the Ninth Circuit's reasoning equally availing here. The government's two previous decisions to release Petitioner on an OSUP demonstrate that the government found that Petitioner was not a danger to the community and that his presence in future immigration proceedings could be "ensured by . . . alternative conditions." Id.

Accordingly, the Court concludes that Petitioner has demonstrated a likelihood of success on the merits.

**C.    Irreparable harm**

Petitioner is suffering irreparable harm because Petitioner is likely being detained in violation of his constitutional rights.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).

Furthermore, as the Ninth Circuit has explained, "immigration detention" results in "subpar medical and psychiatric care . . . , [] economic burdens . . . on detainees and their families . . . , and [] collateral harms to children of detainees."  Hernandez, 872 F.3d 976, 995 (9th Cir. 2017).  Therefore, Petitioner faces irreparable harm.

**D.    Balance of equities and public interest**

Where the government is the opposing party, balancing of the equities and the public interest merge.  See Nken v. Holder, 556 U.S. 418, 435 (2009).  Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction.  Winter, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention."  Vargas v. Jennings, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).  And the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983).  Likewise, in the absence of an injunction, Petitioner is and will continue to experience prolonged detention and the resulting emotional harm.  Therefore, the Court, like many courts across the country, finds that the only reasonable relief is Petitioner's release.  See Grigorian, 2025 WL 2604573, at *10 (collecting cases).

Due to the minimal harms suffered by the government, the Court will not require a security.

## V.    CONCLUSION

For the reasons described above, the Court **GRANTS** the TRO.  The Court **ORDERS** the government to immediately release Petitioner from its custody.

**IT IS SO ORDERED.**